## GEORGE S. HAGANY v. WILLIAM HERBERT, Sheriff.

RETAINING the possession of goods by the seller after the execution and delivery of a bill of sale for them, is *prima facie* fraudulent in contemplation of law, and of the statute against clandestine bills of sale. It is, however. but a *prima facie* presumption, and may be explained or rebutted.

The delivery of the goods into the actual possession of the purchaser, is necessary under our statute as soon as it can conveniently be done after the sale is made, and a valuable consideration for them is paid, or is, in good faith, secured to be paid by the purchaser. And the words " as soon as conveniently may be" mean within a reasonable time thereafter; and that will depend in every case on the situation, character and quantity of the goods, as well as the situation of the parties. and the facts and circumstances attending the transaction.

There doubtless may be a good and lawful sale and delivery of household goods by one person to another, though living in the same house at the time and afterward together; and if sold by one who contemplates giving up housekeeping in a few weeks, and bought by the other in contemplation of going to housekeeping in another house within that time, it would not be unreasonable for the latter to retain them there until he could conveniently remove them to the house he was about to move into with his family. But in such a case the jury should be satisfied from the evidence that the transaction was a fair and honest one, that the bill of sale was genuine, and not clandestine, that the sale was made in good faith and for a valuable consideration paid, or secured to be paid, and that the goods were delivered into the actual and exclusive possession, dominion and control of the purchaser as soon as it was reasonably convenient to do so under the facts and circumstances attending the sale of them.

THIS was an action of replevin by George S. Hagany to recover certain household goods and furniture seized in execution, by William Herbert, Sheriff of the County, upon a *fi. fa.* on a judgment at the suit of the Farmers Bank against Joseph A. Heston and others, as the property of Heston. The plaintiff was the father-in-law of Heston, and on his removal from New Castle in the month of November 1866, had disposed at public sale of his household furniture in general, and had since been residing with his family in the house of the latter, in the city of Wilmington, until the 28th of March following, when he rented and took possession of a house in the city, and removed the

goods and furniture in question from the house of Heston into it, taking with him the wife and children of the latter, who had in the meanwhile changed his residence to New York. A bill of sale of the goods from Heston to the plaintiff for $686, dated March 12th, 1867, was proved and produced in evidence, and the deposition of Heston was also read, to the effect that he had sold and delivered them to him for a good and valuable consideration, and that it was a fair and *bona fide* transaction between them, and that he had received the full value for them. It was likewise proved that the plaintiff directed and paid for the removal of the goods to his house on the 27th and 28th day of March 1867, and that on the next day the execution of the Bank was issued against Heston, and the same day came to the hands of the defendant and was levied by him on the third day of April following, upon the goods as the property of Heston, who failed about that time, and being the cashier of the Bank proved a defaulter to it, and upon which the judgment had been entered at the suit of the Bank against him and his sureties.

*Patterson*, for the plaintiff. The evidence clearly established both a sale and delivery of the goods for a valuable consideration, and for the full worth of them, by Heston to the plaintiff, on the 12th of March, 1867, and the entire removal of them by the latter to the house rented by him in another part of the city by the 28th of that month, and one day and night, at least, before the execution was issued and placed in the hands of the defendant, as Sheriff, and which, of course, under such circumstances, could never have constituted any lien upon the goods, although afterward levied upon them.

*Bradford*, for the defendant. It was evident from the facts and circumstances proved, that the transfer of the goods by Heston to Hagany, his father-in-law, who was living at the time under the same roof with him, was without any actual delivery of them, or any change whatever

in the previous possession of them; and, if so, the bill of sale was clandestine, and the pretended sale of them was void in law, because it was contrary to the express provision of the statute in such case made and provided. But even, if there was an actual sale and delivery of the goods to the plaintiff, it was equally evident that it was made by both of the parties to it in anticipation of the speedy development of Heston's defalcation and insolvency, and with the mutual design to prevent their seizure in execution by the Bank on its judgment, which they well knew would soon be entered against Heston and his sureties, and which was entered against them as early as the 18th of March, or in six days thereafter. And if such was their purpose, then the sale and delivery was fraudulent and void in contemplation of law as against his creditors, and the Bank in particular, even if the jury should be satisfied that such sale and delivery were actually made for a valuable consideration. Because they must be satisfied that the bargain and sale was *bona fide* and was made and contracted in entire good faith between them; for if it was made with intent to defraud or defeat creditors, it was void, although there was, in the strictest sense, a valuable, nay, an adequate consideration paid for the property by the plaintiff to Heston. 1 *Story, Eq. Jur. sec.* 369. 1 *Burr.* 474. *Cowp.* 434. It was also void, because the goods were not delivered into the sole and exclusive possession of the plaintiff after the sale of them to him, as soon as they conveniently could and should have been so delivered to him, so as to give him such a separate and absolute dominion over them, as would constitute such a delivery of them, as both the statute of the State and the statute of frauds in England contemplate and require. For a joint possession by the vendor and purchaser of goods after the alleged sale and delivery of them by the former to the latter, is a badge of fraud and proof positive in law, that there was no actual delivery of them, and this was an absolute and inflexible principle both of law and equity, which renders the sale, whatever may have been the con-

sideration given for the goods, absolutely null and void. *Rev. Code* 183, *sec. 4.* 1 *Campb.* 333. *Twine's Case,* 1 *Smith's Ld. Cases.*

*Patterson,* in reply. The bill of sale was made on the 12th of March, and the judgment of the Bank was not even entered until the 18th, and the execution thereon was not issued until the 29th of that month, and what ground could there then be for the charge that the plaintiff foreknew the forthcoming of the execution, or even of the entry of the judgment, as the sale preceded the former, not less, and the latter, full seventeen days, and which did not reach the hands of the Sheriff until twenty-four hours, at least, after the goods had unquestionably been delivered into the sole and exclusive possession of the plaintiff, and he had removed them to his own house? As to the delay which had in the meanwhile occurred, it was accounted for and explained by the facts proved, that the plaintiff had only a short time before that, retired from the office of Sheriff and removed with his family from New Castle, after selling his household furniture there, to the city of Wilmington, where it was impossible for him to procure a suitable dwelling, prior to the next general moving day, which was on the 25th of March. And it was for that reason, that he and his family were obliged to take up their residence in the meantime in the house and family of his son-in-law, Heston; and it was not, in fact, until the 27th of that month, that he was able to obtain the possession of the house which he had engaged prior to the 12th of it, when he at once set about removing the goods to it, which he had bought on that day, and which he had since owned and held as his sole and absolute property; and which clearly demonstrated that he had removed them to his own house as soon as he conveniently, or even possibly, could have done under the circumstances.

*The Court, Gilpin, C. J., charged the jury,* that the retaining of the possession of goods by the seller after the

execution and delivery of a bill of sale for them, is, *prima facie* fraudulent in contemplation of law, and of our statute against clandestine bills of sale,·and raises, *prima facie*, a presumption that the sale and transfer of them, are but a mere pretence or pretext to cover the goods and prevent his creditors from reaching them. It is, however, but a presumption, and may be explained or rebutted. Under our statute the delivery of the goods into the actual possession of the purchaser is necessary as soon as it conveniently may be done after the sale is made, and a valuable consideration for them is paid, or is in good faith secured to be paid by the purchaser. And the words " as soon as conveniently may be," mean within a reasonable time thereafter ; and that will depend in every case upon the situation, character and quantity of the goods, as well as the situation of the parties, and the facts and circumstances attending the transaction. There doubtless may be a good and lawful sale and delivery of household goods by one person to another, though living in the same house at the time and afterward together, and if sold by one who contemplates giving up house-keeping in a few weeks, and bought by the other in contemplation of going to house-keeping in another house in a few weeks, it would not be unreasonable for the latter to retain them there until he could conveniently remove them to the house he was about to move into with his family. But in such a case, the jury should be satisfied from the evidence, that the transaction was a fair and honest one, and that there was an actual sale and delivery of the property in good faith and for a valuable consideration by the one to the other, and that it was not concocted between them and pretended only, for the purpose of defrauding or defeating the creditors of the vendor and preventing them from seizing the same in execution and satisfaction of the debts due from him to them.

If, therefore, the jury were satisfied from the evidence, that the bill of sale from Heston to the plaintiff, of the 12th of March, 1867, was genuine, and not clandestine, and that the sale of goods mentioned in it was a fair and honest sale,

made in good faith and for a valuable consideration paid by the plaintiff to him, or secured to be paid to him, and that the goods were delivered into the actual possession of the plaintiff, and were subject to his sole and exclusive dominion and control as his own absolute property at the time when the execution process on the judgment of the Farmers Bank against Heston, came to the hands of the defendant, Herbert, as Sheriff, which was at 5 o'clock, P. M., on the 29th of that month, their verdict should be for the plaintiff. If, however, they were not satisfied that such were the facts, and the character of the transaction between them, their verdict should be for the defendant.

The plaintiff had a verdict.